293 P.2d 443

Vernon E. SHIPP, Appellant,

v.

A. G. ERICSON, Eugene Hartzell and Donald F. Ericson, Appellees.

No. 5997.

Supreme Court of Arizona.

Nov. 22, 1955.

Rehearing Denied Jan. 10, 1956.

Milburn N. Cooper, Phoenix, for appellant.

Locklear & Wolfinger, Prescott, for appellees.

UDALL, Justice.

This is an appeal by Vernon E. Shipp, defendant-appellant, from a judgment in the sum of $6,000, rendered against him on a contractual obligation, in favor of plaintiffs-appellees A. G. Ericson, et als. The parties will hereinafter be referred to as plaintiffs and defendant.

The facts giving rise to this suit, stated in a light most favorable to a sustaining of the judgment, are as follows:

Late in the year 1947 or the early part of 1948 the Baptist General Convention of Arizona, an Arizona corporation (hereinafter termed the Baptist Convention), through its agents negotiated with the plaintiff Ericson for the purchase of forty acres of land adjacent to a college site offered by the Prescott Chamber of Commerce and/or City of Prescott for the establishment there of a denominational institution of higher learning to be known as Grand Canyon College. Sometime prior to March 24, 1948, the Baptist Convention took an option on land owned by the plaintiffs and paid them $100, which sum was to be applied on the total purchase price of $6,000. Among other matters this option contained the following condition:

"(c) That in the event you do not within five years from April 1, 1948, build a college upon the adjoining land,  which you are acquiring from the Prescott Chamber of Commerce, title to the above described land shall revert to grantors above named, their heirs and assigns."

The plaintiffs wanted $12,000 for this tract of land but were willing to take $6,000 if a college was established on adjoining land within the prescribed period. After accepting this option the Baptist Convention found condition (c), supra, objectionable, and the defendant, Vernon E. Shipp, who was chairman of the board of Grand Canyon College, went to Prescott to contact the plaintiffs for the purpose of having this clause waived. As a result of defendant's negotiation with plaintiffs the following agreement (obviously drawn by laymen) was entered into, viz.:

"March 24, 1947 (actually 1948)

"A Gentlemen's Agreement Between A. G. Erickson and Vernon E. Shipp

"In lieu of waiving stipulation number three (3) in the optional agreement between the Baptist General Convention of Arizona and A. G. Erickson, I do hereby pledge and agree to pay an additional six thousand ($6,000) dollars at the end of five years on the forty acres of land located immediately North of the College Property provided said College has not been established or one million ($1,000,000) in cash and bona fide pledges placed in escrow in the Valley National Bank of Prescott, by that time.

"Clear title in fee simple to be delivered to the Baptist General Convention immediately.

"Signed:

"Vernon E. Shipp

"Witness:

"Joseph H. Roberts

"I hereby assign to Eugene Hartzell and Donald F. Ericson, each, a one-third interest in the foregoing agreement and any proceeds thereof.

"Dated this 26th day of March, 1948.

A. G. Ericson

"Witness:

A. M. Crawford"

Two days later plaintiffs executed and delivered to the Baptist Convention a warranty deed covering said forty acres of land. Pursuant to the above agreement, the proviso that title should revert to the grantors if the college was not built upon adjoining land within five years was omitted from the deed and same was thereupon delivered to Attorney A. M. Crawford who apparently represented the parties. The balance of the purchase price in the sum of $5,900 was paid at that time and the deed was presumably accepted by the Baptist Convention, as it was recorded on March 30, 1948. The Convention to this date has not challenged the sufficiency of its title.

Plaintiffs' complaint alleged that A. G. Ericson assigned to Eugene Hartzell and Donald F. Ericson each a one-third interest in said contract and that in March, 1948 they jointly conveyed said property to the Baptist Convention because of said agreement by defendant and in complete reliance thereon. Plaintiffs further alleged that more than five years had elapsed since such agreement was entered into and that said college had not been established nor $1,000,000 placed in escrow in the Valley National Bank of Prescott; that payment of $6,000 had been demanded of defendant and payment thereof refused.

Defendant's verified answer denied the import and conclusions of plaintiffs' complaint; set forth certain defenses hereinafter referred to and denied that he was justly indebted to plaintiffs for any amount.

The case was tried to the court, sitting without a jury, whereupon judgment was entered for plaintiffs. Later a motion for new trial was made which was denied by the trial court and thereafter this appeal was seasonably perfected.

As we view the case the problem simply stated is to determine just what the parties to the agreement sued upon were bargaining for and whether the agreement has been performed. The contract itself—improperly styled a "guaranty" in the complaint—actually is a unilateral promise to pay subject to a future event, namely, failure to establish the college or at least to raise the necessary funds for such a college. Plaintiffs agreed to waive a certain requirement of their option agreement and were then obligated by the terms of the contract in question to deliver "clear title in

fee simple" to the Baptist Convention. In return for these acts defendant agreed to pay an additional $6,000 at the end of five years should the college not be established, the end result to be that plaintiffs either received the full asking price of $12,000 or were benefited by the establishment of the college on the adjacent land. Though defendant in a sense "guaranteed" plaintiffs would lose nothing by waiving the requirement of the option, his obligation to plaintiffs was primary, i. e., his promise to pay was not dependent upon any promise made by the Baptist Convention.

"A guaranty is a collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance." 38 C.J.S., Guaranty, § 1, p. 1129.

Strictly speaking, the contract is not a guaranty and hence defendant's liability is not governed by the legal principles controlling in a true guaranty case.

■ Defendant first contends that the establishment of a college within five years has been accomplished, thus that the performance upon which his obligation is conditioned has been rendered. Some evidence appears in the record that a temporary college was conducted at the Prescott Armory for two years and that the college now functions on a permanent basis in Phoenix. This we hold was not the performance contemplated by the agreement. It is clear the entire purpose motivating plaintiffs to give an option at half their former asking price was to assure plaintiffs that the college would be established upon the adjoining land, thus enhancing the value of their surrounding property. Establishment of the college anywhere else obviously would confer no benefits upon the plaintiffs such as would enable them to recoup the agreed reduction in their asking price. The contract sued upon specifically refers to "the forty acres of land located immediately North of the *College Property*." There is evidence that certain frame buildings were actually started upon this proposed college site but were later torn down. The only conclusion to be drawn is that the contemplated performance was not rendered. Thus defendant is liable on the contract, if plaintiffs themselves have performed their obligations as called for by the contract.

■ There is no merit to defendant's next contention, that the trial court erred in admitting the unsigned copy of the optional agreement (exhibit 1) in evidence. The primary objection to its admission was that said agreement was irrelevant, incompetent and immaterial. To properly understand and evaluate the "Gentlemen's Agreement" herein sued upon it was very essential that the preliminary agreement be in evidence. In one sense the two agreements are inextricably linked together—

particularly as to whether the clause contained in stipulation (c) of the option agreement is what is referred to as "stipulation number three (3)" in the contract sued upon. That they are one and the same seems established beyond cavil. We say this because the option agreement with the Baptist Convention expressly provides that the warranty deed to be given by plaintiffs should contain three provisions—termed "restrictions" in the option—designated as (a), (b) and (c). Subdivision (a) provides "that the premises shall not be conveyed or leased to or occupied by any person or persons not of the Caucasian race", (b) forbids the use of the premises for the sale or manufacture of intoxicating liquor, etc., and (c) is the cause heretofore set forth haec verba. It is apparent that this third clause, designated (c), is more than a mere restriction on the grant in the proposed deed. In effect plaintiffs proposed to convey a fee simple subject to a condition subsequent, namely the failure to build the college within five years, whereby a possibility of reverter of the whole estate remained in the grantors, their heirs and assignees. This was a far more drastic limitation on the grant than the other two not-uncommon restrictions, only one of which was even included in the executed deed. Defendant testified that he did nct recall what stipulation No. 3 has reference to even though he was offering to pay $6,000 for its removal from the conveyance. On the other hand plaintiff Ericson testified positively that clause (c) and stipulation No. 3 were the same, and that it was this clause that defendant wanted eliminated from the deed of conveyance. In the light of this record we hold the trial court was fully justified, under the objections made, in admitting exhibit No. 1 in evidence and in concluding that the condition incorporated therein and the stipulation found in the "Gentlemen's Agreement" were the same.

■ Lastly we consider the basic question raised by defendant, namely, whether delivery of the deed in question complied with the following requirement set forth in the "Gentlemen's Agreement", supra, viz.:

"Clear title in fee simple to be delivered to the Baptist General Convention immediately."

Defendant contends that he is not bound by his contract because certain incumbrances contained in the option were not omitted from the warranty deed, although the instrument sued upon—which he signed and in part at least wrote himself—requires waiver only of stipulation No. 3. He argues that his promise was merely an offer, to be accepted by performance of the acts desired, in accordance with the terms and requirements of the agreement, concluding that since the plaintiffs have not performed their part of the bargain there has been a failure of consideration.

A careful reading of the option agreement discloses not only the provisions des-

ignated as (a), (b) and (c), supra, but also reservations for (1) a right-of-way across the lots to be conveyed, for ingress and egress to adjoining premises owned by plaintiffs, and (2) the right to drill a well upon a certain 10-acre tract therein conveyed with the right of access to service the pump. The record is clear that the one and only thing that was so objectionable to the defendant, or the Baptist Convention, as to prevent consummation of the sale of the land was the reversionary clause (c), and it was to secure its waiver or elimination that the defendant made the trip to Prescott to confer with Ericson, which resulted in the gentlemen's agreement signed by defendant Shipp. At that time the parties were cognizant of all matters treated in the option agreement. Whether or not all of the provisions were equally objectionable to defendant is disputed. The fact remains that the agreement which defendant executed on his own behalf specifies only one of these several matters to be waived. Thereafter it is true a general requisite of clear title in fee simple is recited. The only conclusion consistent with law and logic is that the clear title in fee simple to be delivered by plaintiffs to constitute performance of the agreement was clear title to the estate conveyed, except such incumbrances as were specified in the option contract. Only by such an interpretation of the contract is the general clause harmonized with the specific clause which precedes it. Defendant did not go to Prescott to procure a waiver of all the provisions found in the entire option agreement, but rather to insure that the Baptist Convention acquire a tract of land adjacent to the proposed college site at as low a price as possible without being faced with a reversionary clause if it failed to go through with its building program. His obvious motive was to put the deal through for the Convention. Thus it would seem his own desires as to the status of the title was subordinate to those of the Convention.

Inasmuch, therefore, as the Baptist Convention was satisfied with the executed deed, which is best evidenced by immediately placing it of record, it would seem that the trial court was correct in concluding that the clause "clear title in fee simple" was intended by the parties to mean only that stipulation "3" was to be deleted. More than five years elapsed before any complaint was made that "clear title" had not been conveyed by the plaintiffs. Defendant received exactly the performance he bargained for. He cannot now complain that "clear title in fee simple" was not delivered.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.